**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA**

STEVEN J. GUZIEWICZ,

                Plaintiff,

      v.

NINOUSKA GOMEZ, et al.,

                Defendants.

CIVIL ACTION NO. 3:17-CV-01699

(MEHALCHICK, M.J.)

## <u>MEMORANDUM OPINION</u>

Plaintiff Steven J. Guziewicz, a former probation supervisee, filed a complaint in September 2017 asserting 42 U.S.C. § 1983 and state law claims against three Lackawanna County Adult Probation Office (LCAPO) employees – Ninouska Gomez, Al Munley, and William J. McCarthy Jr. (collectively, "Probation Defendants") – and state law claims against Kurt P. Moran, a licensed doctor, and Amy Gorolis, the office manager of Moran's medical practice. (Doc. 1). Suing all defendants in their individual and official capacities, Guziewicz alleges false arrest and imprisonment, unlawful seizures of his person and property, conspiracy to violate § 1983, malicious prosecution, abuse of process, intentional infliction of emotional distress (IIED), supervisory liability, failure to train and implement policies and practices, and breach of physician-patient confidentiality. (Doc. 1, at 1, 29-37).[1] Defendant Moran asserts a cross-claim seeking contribution and indemnification from the Probation Defendants, in the event he is found liable. (Doc. 21, at 11). In August 2018, pursuant to 28

---

[1] In April 2018, the Court granted Defendant Moran's motion to dismiss to the extent of dismissing an IIED claim asserted against Moran. (Doc. 18; Doc. 19). While Guziewicz was granted leave to file an amended complaint, he never filed one, and that claim remains dismissed.

U.S.C. § 636(c)(1), the parties consented to the undersigned's jurisdiction to conduct all proceedings relating to this action. (Doc. 26).

Presently before the Court are unopposed motions for summary judgment filed by the Probation Defendants and Defendant Moran in January 2020 (collectively, "Moving Defendants"). (Doc. 45; Doc. 48). After the Moving Defendants filed statements of facts and supporting briefs, Guziewicz's counsel sought three extensions to respond to the motions and then moved for permission to withdraw as Guziewicz's counsel. (Doc. 46; Doc. 47; Doc. 49; Doc. 50; Doc. 51; Doc. 53; Doc. 55; Doc. 58). The Court granted counsel's motion to withdraw and directed Guziewicz to obtain new counsel and respond to the pending summary judgment motions by July 26, 2020. (Doc. 64). The Clerk of Court sent a copy of the Court's Order to Guziewicz, but the mail was returned as "undeliverable." (Doc. 66). New counsel has not appeared on behalf of Guziewicz, and Guziewicz has not responded to the pending motions. The Court deems the Moving Defendants' motions unopposed and ripe for review.

For the reasons that follow, the Probation Defendants' motion for summary judgment (Doc. 45) is **GRANTED**; Defendant Moran's motion for summary judgment (Doc. 48) is **GRANTED**; Defendant Moran's cross-claim (Doc. 21, at 11) is **DISMISSED AS MOOT**; the Clerk of Court is directed to enter judgment in favor of the Moving Defendants and against Guziewicz; Guziewicz's remaining state law claims against non-moving Defendant Gorolis are **DISMISSED WITHOUT PREJUDICE** to Guziewicz's right to refile them in state court; and the Clerk of Court is directed to **CLOSE** this case.

I.    STATEMENTS OF UNDISPUTED MATERIAL FACTS

Initially, pursuant to Rule 7.6 of the Local Rules of Court for the Middle District of

Pennsylvania, a party who fails to submit a brief opposing a motion is deemed not to oppose the motion. L.R. 7.6. However, a plaintiff's failure to respond "is not alone a sufficient basis for the entry of a summary judgment." *Anchorage Assocs. v. V. I. Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990); *see also Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991). The Court must still determine whether the motion has been properly supported so as to entitle the moving party to judgment as a matter of law. *Anchorage Assocs.*, 922 F.2d at 175. In the matter *sub judice*, Guziewicz has failed oppose to the Moving Defendants' motions for summary judgment. Therefore, the motions will be deemed unopposed pursuant to Local Rule 7.6. Moreover, because Guziewicz has failed to file separate statements of material facts controverting the statements filed by the Moving Defendants, the statements of material facts submitted by the Moving Defendants will be deemed admitted pursuant to Local Rule 56.1. Nevertheless, the Court must satisfy itself that Defendants have met their burdens of production and therefore are entitled to summary judgment as a matter of law. *See Anchorage Assocs.*, 922 F.2d at 175.

The following facts are drawn from the Moving Defendants' statements of undisputed material facts in support of their respective motions for summary judgment.

A.    PROBATION DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS

In December 2013, Guziewicz was sentenced to 11½ to 23½ months' incarceration, followed by 36 months' probation with certain conditions, in the Lackawanna County Court of Common Pleas ("Lackawanna County CCP") after pleading guilty to 35 Pa. Stat. Ann. § 780-113(a)(12) ("The acquisition or obtaining of possession of a controlled substance by misrepresentation, fraud, forgery, deception or subterfuge."). (Doc. 46, at 2); *see Commonwealth v. Guziewicz*, Docket No. CP-35-CR-0000865-2012 (Lackawanna Cnty.

C.C.P.). Prior to sentencing, Guziewicz executed an authorization permitting the LCAPO to secure Guziewicz's medical records from a record custodian. (Doc. 46, at 13).[2] After sentencing, Guziewicz was placed on parole under the supervision of Defendant Ninouska Gomez, a probation officer. (Doc. 46, at 7, 18).[3]

In October 2015, Guziewicz violated a condition of his probation, his probation was revoked, and he was remanded to Lackawanna County Prison to serve the remaining term of incarceration to which he was sentenced. (Doc. 46, at 2). In late October, he signed a written "probation/parole intermediate punishment contract" providing:

> You are in the custody of the Court until the expiration of your supervision or until further order of the Court. The Probation/Parole Department may cause your detention in a correctional facility should it be determined that you are in violation of any condition of your supervision. If you are charged with a new offense during supervision, you may be temporarily detained pending disposition of the new offense. *In signing this probation/parole intermediate punishment contract, you hereby agree to the warrantless search of your person, property, vehicle, or residence and the seizure of any contraband found, if it is reasonably suspected that you are in violation of probation/parole, intermediate punishment.*

(Doc. 46, at 3 (emphasis added)).

The agreement further provided that Guziewicz would be subject to arrest without warrant if he failed to abide by certain conditions, to wit:

> #7. You will refrain from the use of alcohol and unlawful possession or sale of narcotics and illicit drugs and abstain from the use of controlled substances

---

[2] Guziewicz signed another undated authorization permitting the same. (Doc. 46, at 13). Regarding the September 2013 authorization to release records, the Probation Defendants forwarded a Request for Admission to Guziewicz asking that he admit that the signature on the authorization is in fact his. Guziewicz never responded to that request. (Doc. 46, at 15).

[3] The term of incarceration to which Guziewicz was sentenced expired on May 29, 2014, as a term of parole, and he began to serve his 36-month term of probation. (Doc. 1, at 5). Thus, although counsel and the parties appear to use the terms "probation" and "parole" interchangeably, Guziewicz was on probation at the time of the events giving rise to his claim. The Court will therefore refer to Guziewicz's post-May 2014 supervision as probation herein.

within the meaning of the Controlled Substance, Drug, Device and Cosmetic Act, without a valid prescription. . . . You will submit to urine testing when ordered by your probation/parole officer.

#8. You will not knowingly supply false information to the probation/parole department or the court.

*       *       *

#10. You will abide with the following special conditions: (d) no drugs or alcohol and (f) no medication without a valid prescription and medication must not be changed without advising P.O.

(Doc. 46, at 3-4 (citing 46-1, at 4-5)) (hereinafter, "Condition #7"; "Condition #8"; "Condition #10(d)"; and "Condition #10(f)").

On March 1, 2016, Guziewicz reported to LCAPO to provide a urine sample pursuant to a random drug screening (pursuant to a "color system") and tested positive for hydrocodone. (Doc. 46, at 4, 6).[4] When Guziewicz arrived for the screening, he met with Ryan Griffiths, the probation officer assigned to administer drug screenings that morning. (Doc. 46, at 17). Guziewicz provided PO Griffiths with a prescription for Vicodin, dated February 26, 2016, bearing Guziewicz's name as the prescribed, and written on Defendant Moran's prescription pad. (Doc. 46, at 17). The prescription "did not look right to [Griffiths]" and "actually looked like an inked signature rather than a copy." (Doc. 46, at 17). PO Griffiths provided the prescription to PO Gomez, Guziewicz's probation officer, for further investigation. (Doc. 46, at 17-18).

PO Gomez brought the Vicodin prescription to Defendant Moran's office, where

---

[4] On the same day, Guziewicz's postconviction petition for collateral relief was granted, his sentence imposed on October 6, 2015, was vacated, and Guziewicz was placed on a period of probation beginning May 29, 2014, until, at the latest, May 29, 2017, subject to the same conditions. (Doc. 46, at 4-5; Doc. 46-1, at 9). The same conditions of probation were re-imposed and remained in full force and effect until May 29, 2017. (Doc. 46, at 4-5).

Defendant Gorolis, Moran's office manager and record keeper, confirmed that the prescription was a forgery and indicated that Defendant Moran did not issue the prescription. (Doc. 46, at 18). Gorolis showed PO Gomez a copy of another prescription, also not prescribed by the doctor, that Guziewicz was attempting fill at Sheeley's Drug Store in Scranton ("Sheeley's"). (Doc. 46, at 19). Gorolis gave PO Gomez a copy of lab results from a December 11, 2015 drug test indicating that Guziewicz was positive for buprenorphine, norbuprenorphine, fentanyl, oxycodone, marijuana, morphine, oxymorphone, and noroxycodone.[5] (Doc. 46, at 12-13; *see* 46-1, at 32-33). Later, a third forged prescription, dated February 25, 2016, was revealed. (Doc. 46, at 12).[6] At some point, Gorolis advised PO Gomez and Scranton Police Department Corporal Thomas McDonald, who would file criminal charges against Guziewicz, *see infra*, that Guziewicz had been discharged from Moran's service and had not been a patient for several months prior to March 2016. (Doc. 46, at 12, 15).

On March 4, 2016, the Lackawanna County CCP issued a capias for Guziewicz's arrest and detention based on PO Gomez's probation report indicating Guziewicz had failed to comply with two conditions of his probation: Condition #7 (abstain from using controlled substances without valid prescription), and Condition #8 (refrain from supplying false information to the Probation/Parole Department). (Doc. 46, at 5).

---

[5] While not indicated the Probation Defendants' Statement of Undisputed Facts, the lab report indicates that the fentanyl and oxycodone were prescribed to Guziewicz at the time and reflected "compliant" under "Result Interpretation." (Doc. 46-1, at 32). The report further indicates "non-complaint" for marijuana and "present" for buprenorphine and morphine. (Doc. 46-1, at 32).

[6] Jeffrey Zymblosky, a pharmacist at Sheeley's, brought the third prescription with him at his deposition in October 2, 2019. (Doc. 49-11, at 16-17).

PO Gomez then submitted an Amended Violation of Probation asserting violations of Conditions # 3, Condition # 7, and Condition # 11(f) (no medications without valid prescriptions).[7] As proof of the violations, PO Gomez indicated that on March 1, 2016, Guziewicz "submitted a forged prescription to a probation officer when he reported for color system," he tested positive for opiates without a valid prescription, and he was charged with forgery for attempting to fill fraudulent prescriptions for controlled substances. (Doc. 46, at 8). Gomez entered notes in the probation office's log notes indicating the basis for revoking Guziewicz's probation, writing:

> SUBJECT REPORTED FOR COLORS TODAY AND SUBMITTED A COPY OF PRESCRIPTION FOR VICODIN TO PO GRIFFITHS. PO SUSPECTED IT WAS A FORGED PRESCRIPTION. COPY WAS TAKEN AND GIVEN TO PO GOMEZ. PO GOMEZ WHILE OUT ON FIELD VISITED DR. MORAN'S OFFICE FOR CONFIRMATION THAT STEVEN WAS PRESCRIBED MEDS. DURING THIS VISIT, PO WAS ADVISED THAT IT IS A FORGED PRESCRIPTION AND SUPPLIED PO ANOTHER COPY OF A FORGED SCRIPT THEY OBTAINED FROM SHELLEY'S [DRUG STORE] FOR OXYCODONE. DOC'S OFFICE ALSO GAVE PO A COPY OF A DRUG SCREEN THAT THE DEFENDANT WAS POSITIVE FOR SPICE, SUBOXEN AND MORPHINE (BOTH PRESCRIBED BY DOC).
>
> MR. GUZ WAS DISCHARGED FROM DR. MORAN'S CARE AS OF APPROXIMATELY DEC 2015. WHEN MR. GUZ WAS REPAROLED OFFICER DISCUSSED WITH HIM IN LENGTH THAT HE DID NOT NEED ANY NARCOTIC MEDICATION BECAUSE HE WAS INCARCERATED FOR A LONG PERIOD OF TIME AND WAS NOT TAKING ANY. HE AGREED. DR. MORAN PRESCRIBED STEVEN OXYCODONE AND FENTYNOL PATCHES UP UNTIL DECEMBER 2015.
>
> PO WILL START VIOLATION PROCEEDINGS.

---

[7] According to the agreement Guziewicz signed, the condition that he not take medications without a valid prescription is Condition #10(f), not Condition 11(f), although the condition referred thereto is the same. (Doc. 46-1, at 38).

(Doc. 46-1, at 18; Doc. 46, at 8-9).

Probation Defendant Munley held a preliminary (i.e., "*Gagnon I*") hearing in April 2016 at which Guziewicz and PO Gomez testified. PO Gomez testified to the following, as summarized by Munley:

> 1) On March 1, 2016, the Defendant submitted a prescription to the Officer assigned to the Color Program that appeared to be a forgery. The Officer further stated that later on the same date she brought the prescription sheet to the office of Dr. Kurt Moran. Office staff indicated the prescription was indeed a forgery.
>
> 2) Officer Gomez testified that the Defendant was taking medication without providing proper documentation to her as required by special condition of supervision.
>
> 3) Officer Gomez testified the Defendant has a pending offense being investigated by Scranton Police relative to the fraudulent prescription. The charge has yet to be filed.

(Doc. 46, at 6).

In his testimony, Guziewicz admitted that the urine screen he provided to PO Gomez contained hydrocodone; conceded to having failed to notify PO Gomez of the prescription beforehand but had attempted to do so after he was detained at his apartment on March 1, 2016; testified that the prescription bottle for the hydrocodone was in his apartment at the time of his arrest; and acknoweledged there was probable cause for a violation of the condition prohibiting him from ingesting prescription medication without first notifying his probation officer. (Doc. 46, at 6-7; 46-1, at 13-14). He also testified to his belief that the violation of Condition # 7 stemmed from the recovery of an illegally seized lab report from Dr. Moran's office. (Doc. 46-1, at 14). PO Munley found enough evidence to proceed to a final (i.e., Gagnon II") hearing. (Doc. 46, at 7; Doc. 46-1).

On May 6, 2016, Cpl. McDonald filed a Police Criminal Complaint charging Guziewicz with forgery, 18 Pa.C.S. § 4101(a)(1)-(2), based on allegations that Guziewicz

"altered a writing of another, namely, Dr. Kurt Moran, for a prescription for medication without the authority of Moran and that the forged prescription was presented to Sheeley's Drug Store." (Doc. 46, at 9). In a May 17, 2016 Affidavit of Probable Cause, Cpl. McDonald stated:

> On the above date and time CPL Thomas McDonald of the Scranton Police Special Investigations Division was contacted by Agent Nina Gomez of Lackawanna County Probation. Agent Gomez informed Cpl. McDonald that she recovered 2 fraudulent prescriptions from a Steven Guziewicz who is on her probation case load. The prescriptions were verified fraudulent by Sheeley's Drug Store where Guziewicz tried to pass them and have them filled. CPL McDonald was given copies of these prescriptions at that time. The prescriptions were written on a script pad from Dr. Moran's office. One was for Vicodin 10 mg and the other was for Oxycodone 30mg. Agent Gomez was then informed that a follow up investigation will be completed regarding this incident.

> Cpl McDonald went to Dr. Moran's Office on 10 Green Ridge St and spoke with the office manager Amy Gorolis. At that time Mrs. Gorolis stated that Dr. Moran was not in town but she would speak to me. She was informed of the situation and stated that she was aware of it because she spoke with Sheeley's Drug Store. Cpl McDonald then showed Mrs. Gorolis the copies of the prescriptions that Guziewicz tried to pass. In regards to the Vicodin prescription Mrs. Gorolis showed Cpl McDonald several things that are wrong with the script. She stated that Vicodin does not come in 10 mg. She also pointed out that this prescription was for 20 pills and that Vicodin does not come in that dosage that it should have been for 120. She also stated that the signature on the bottom of the script is not Dr. Moran's. In regards to the Oxycodone script Mrs. Gorolis pointed out that the Doctors signature is not right. Both scripts have clearly different signatures. When asked if she knew how someone would obtain the blank prescriptions from the office Mrs Gorolis stated that she did not know. Mrs. Gorolis stated that the prescription pads are kept in a filing cabinet behind the desk area of the office where she and other persons in the office work. Mrs. Gorolis stated that Guziewicz was a patient of Dr. Moran but is no longer a patient and hasn't been for a few months.

> On 31 March 2016 Cpl McDonald spoke with the pharmacist at Sheeley's Drug Store Jeff Zymblosky in regards to his incident. Mr. Zymblosky stated that when Guziewicz brought the scripts in on March 16, 2016 he noticed that the Vicodin script was wrong because of the mg dosage. He also noticed that both prescriptions had different signatures. At that time he stated that he informed Guziewicz of the problem with the prescription and that he would not fill them. Mr. Zymblosky stated that he contacted the DEA Diversion Agent but did not

hear back from anyone.

(Doc. 46-1, at 45; Doc. 46, at 10-11).

Magistrate Paul Keeler held a preliminary hearing on August 31, 2016, on the charge of forgery arising from Guziewicz's creation and submission of a forged prescription. (Doc. 46, at 13-14). Cpl. McDonald testified that PO Gomez had provided three forged prescriptions and that Defendant Gorolis informed him that there were several discrepancies regarding the dosage amounts and the quantities indicated in the prescriptions.[8] (Doc. 46, at 14). Cpl. McDonald also testified that Gorolis was familiar with Defendant Moran's signature and stated that the signatures on the prescriptions were not Moran's. (Doc. 46, at 14). At the conclusion of the preliminary hearing, Magistrate Keeler found that a *prima facie* case had been established on the forgery charges filed against Guziewicz. (Doc. 46, at 15). Ultimately, the charges "were either withdrawn or dismissed because in Cpl. McDonald's criminal complaint he had incorrectly assigned a date of March 16, 2016 as the time that the forged prescription was passed." (Doc. 46, at 19).

In October 2016, the Honorable John L. Braxton held a final ("*Gagnon II*") hearing

---

[8] The Probation Defendants note that although Gorolis did not testify at the hearing, "the information which she related to Cpl. McDonald is properly considered" in their motion for summary judgment. That is, because Gorolis is "available to testify at trial and would be called if this matter proceeds," her hearsay statements are capable of admission at trial and therefore may be considered by the Court. (Doc. 46, at 14 (citing *Shelton v. Univ. of Med. & Dentistry of New Jersey*, 223 F.3d 220, 223 n.2 (3d Cir. 2000) (citing *Stelwagon Mfg. Co. v. Tarmac Roofing Sys., Inc.*, 63 F.3d 1267, 1275 (3d Cir. 1995) ("Presumably, Feeser would have been able to produce the customers themselves at trial. Accordingly, the rule in this circuit is that hearsay statements can be considered on a motion for summary judgment if they are capable of being admissible at trial.")))). In any event, because Guziewicz has not opposed the Probation Defendants' motion, he is deemed to have admitted their statements of facts and has not raised any arguments challenging the underlying record on evidentiary grounds, i.e., hearsay.

regarding the revocation of Guziewicz's probation. (Doc. 46, at 15). The Assistant District Attorney advised Judge Braxton that the Commonwealth was proceeding with Guziewicz's violation of Condition 10(f) of his probation, i.e., that he refrain from ingesting any medication without a valid prescription and notify his PO before changing medications. (Doc. 46, at 16). PO Gomez testified that as of January 15, 2016, the only medication Guziewicz advised her he was taking was Advil, and he indicated he was not taking any narcotic medications. (Doc. 46, at 16). PO Gomez testified that Guziewicz tested positive for Vicodin on March 1, 2016, and Guziewicz testified that he told PO Griffiths he was taking Vicodin but had failed to advise PO Gomez about the medication. (Doc. 46, at 16). Guziewicz's testimony was that he had provided PO Griffiths with a photocopy of the "actual prescription" that he had secured from the Regional Hospital of Scranton ER (RHS) several months back. (Doc. 46, at 16).

After Guziewicz filed the instant claim, the parties deposed PO Griffiths, PO Gomez, PO Munley, Cpl. McDonald, and Defendant McCarthy, the Head of Probation for Lackawanna County. (Doc. 46, at 17-24). Some of this testimony has already been set forth in the Court's recitation of the relevant facts, *supra*, and will not be repeated in full here. PO Griffiths testified that at the March 1, 2016 drug screening, Guziewicz provided him with the February 26, 2016 forged proscription, which PO Griffiths found suspicious and therefore brought to PO Gomez for further investigation. (Doc. 46, at 17). PO Griffiths further testified that Guziewicz's "representation that what he had presented on March 1, 2016, was a prescription from [RHS] was false." (Doc. 46, at 17).

PO Gomez's deposition testimony confirmed that she was Guziewicz's assigned probation officer on March 1, 2016, that she submitted an Amended Notice of Probation

Violation alleging that Guziewicz submitted a forged prescription to a probation officer on that date, and that she brought that prescription to Defendant Moran's office, where she confirmed that it was a forgery and had not originated from Moran. (Doc. 46, at 17-18). PO Gomez testified that in support of the revocation of Guziewicz's probation, she documented that Guziewicz had tested positive for, *inter alia*, morphine and THC "while at Dr. Moran's office" on December 11, 2015. (Doc. 46, at 18). PO Gomez indicated that "the sole violation supporting the revocation of Guziewicz's probation/parole which was advanced by her was the fact that on March 1, 2016, Guziewicz tested positive for a narcotic without giving a valid prescription." (Doc. 46, at 18).[9] Further, PO Gomez stated that "the prescription from Regional Hospital of Scranton was not the prescription that Ryan Griffiths had given her on the morning of March 1, 2016." (Doc. 46, at 20).

At his deposition, Cpl. McDonald testified that he investigated the underlying fraudulent prescription charges and spoke with both Defendant Gorolis and Sheeley's pharmacist Jeff Zymblosky. (Doc. 46, at 20). Cpl. McDonald disclaimed ever having conspired with PO Gomez to unlawfully revoke Guziewicz's probation and rejected the claim that PO Gomez had attempted to influence Cpl. McDonald regarding whether to file criminal charges against Guziewicz. (Doc. 46, at 20). During Cpl. McDonald's investigation, Gorolis reported that Guziewicz was not longer a patient of Defendant Moran and had not been a patient for several months, leading Cpl. McDonald to conclude that the prescriptions were

---

[9] PO Gomez also testified that she did not know Renee Magnotta (Doc. 19, at 20), a former probation officer who, according to Guziewicz's complaint, conspired with Gomez to essentially trump up charges against Guziewicz and falsely accuse him of violating the terms of his parole and committing forgery. (Doc. 1, at 6-7). Guziewicz alleges that Magnotta was motivated by a desire to undermine or impair Guziewicz's *pro se* civil suit against her by arranging for his "undue incarceration." (Doc. 1, at 6).

forged, written as they were on Moran's prescription pad. (Doc. 46, at 21).

PO Munley, a 24-year employee of the LCAPO, provided testimony bearing on Guziewicz's claim of supervisory liability. (Doc. 46, at 21-22). PO Munley testified that he is not n LCAPO supervisor, though he is considered a mentor because of his experience; that all supervisory tasks are undertaken by LCAPO's Chief and Deputy Probation Officers; and that he does not provide training in the probation office. (Doc. 46, at 21). PO Munley indicated that every probationer accepted into a probation/parole program must execute an authorization enabling supervising probation officers to secure records from the probationer's health care providers, "one of the purposes for the medical authorization is to determine whether a probationer has a valid prescription in the event that their sample tests positive for a controlled substance." (Doc. 46, at 22). By signing the authorization, "the offender is giving up his rights to object to the Probation Department securing medical records." (Doc. 46, at 22).

Finally, the LCAPO's Head of Probation, Defendant McCarthy, testified to the following: (1) adult probation officers are employed by the Court of Common Pleas to work for the judges and for the community of supervisees; (2) probation officers must have a bachelor's degree and receive three weeks of initial training conducted by the Pennsylvania Board of Probation and Parole; (3) every year, probation officers must complete at least 40 hours of training by way of continuing education credits; (4) an adult probation/parole officer manual, which is updated every year to ensure compliance with state-mandated standards and conditions, is provided to all probation officers; (5) since McCarthy has held his current position, the LCAPO has been "100% compliant with the standards promulgated by the State of Pennsylvania"; (6) regarding Guziewicz, the LCAPO found that the prescription

Guziewicz was using was not valid "and as a result he was taking an illegal substance which prompted the revocation of his probation/parole." (Doc. 46, at 22-23).

    B.    DR. MORAN'S STATEMENT OF UNDISPUTED MATERIAL FACTS[10]

Dr. Moran treated Guziewicz from 2010 until December 18, 2015, when Moran discharged Guziewicz from his practice after finding medications in his system that Moran had not prescribed. (Doc. 49, at 2-3). Defendant Gorolis was the doctor's office manager. (Doc. 49, at 2). On January 29, 2016, Jeffrey Zymblosky, the Sheeley's pharmacist, filled an Oxycodone prescription for Guziewicz that was written on a pad bearing Moran's letterhead. (Doc. 49, at 2). The prescription was dated January 28, 2016, "which was more than a month *after* [Guziewicz] had been discharged from Dr. Moran's practice." (Doc. 49, at 2 (emphasis in original)). As discussed *supra*, Zymblosky brought the original prescription with him to his October 2, 2019 deposition. (Doc. 49, at 2). On February 25, 2016, Guziewicz attempted to fill another prescription at Sheeley's – however, the prescription was not filled, Sheeley's faxed a copy of it to Moran's office on the same day, and Zymblosky brought the original to his deposition. (Doc. 49, at 2). Zymblosky testified that handwrote a notation on the prescription itself indicating "Fake Rx." (Doc. 49, at 2).

On March 1, 2016, he provided to PO Griffiths a prescription for Vicodin dated February 26, 2016, written on Moran's pad. (Doc. 49, at 3). PO Griffiths suspected the

---

[10] Dr. Moran's Statement of Undisputed Material Facts includes additional facts that the Court will not rehash here because they are already included within the Probation Defendants' Statement of Undisputed Facts and set forth herein. Such facts include that Guziewicz executed an Authorization to Release Information on September 19, 2013, and again at a later date, signed the Rules and Conditions Governing Probation/Parole agreement in October 2015, released from custody in December 2015 and placed on probation under the supervision of PO Gomez and subject to random drug testing, and tested positive for hydrocodone on March 1, 2016. (Doc. 49, at 2-3).

Vicodin prescription was fraudulent and forwarded it to PO Gomez, who brought the prescription to Moran's office and confirmed, through Defendant Gorolis, that it was in fact a forgery. (Doc. 49, at 3). Gorolis provided PO Gomez with a copy of the February 25, 2016 fraudulent prescription and a copy of the December 11, 2015 urinalysis reflecting that Guziewicz was positive for various substances. (Doc. 49, at 4). Moran was not present at the time, Gorolis did not call or otherwhile contact him while PO Gomez was in his office, Moran did not discuss Guziewicz's prescriptions or other medical records with Gorolis on March 1, 2016, and Gorolis did not request Moran's approval or personal authorization to provide any information to PO Gomez on that date. (Doc. 49, at 4).

## II.   LEGAL STANDARDS

### A.   MOTION FOR SUMMARY JUDGMENT

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show

that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 278 (3d Cir. 2000). The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Id.*

"Although the party opposing summary judgment is entitled to the 'benefit of all factual inferences in the court's consideration of a motion for summary judgment, the nonmoving party must point to some evidence in the record that creates a genuine issue of material fact.'"[11] *Velentzas v. U.S.*, No. 4: CV -07-1255, 2010 WL 3896192, *7 (M.D. Pa. August 31, 2010) (quoting *Goode v. Nash,* 241 F. App'x 868, 868 (3d Cir. 2007) (citation omitted). The opposing party "cannot rest solely on assertions made in the pleadings, legal memorandum, or oral argument." *Goode,* 241 F. App'x at 868 (internal quotation marks omitted). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986).

---

[11] *See also Beenick v. LeFebvre*, 684 Fed. Appx. 200, 206 (3d Cir. 2017) (stating the purpose of requiring parties to cite to particular parts of the record in their briefs about a motion for summary judgment is to "assist the court in locating materials buried in a voluminous record") (quoting Fed. R. Civ. P. 56(c)(1)(A)).

B.   SECTION 1983 CLAIMS

Guziewicz asserts various federal civil rights claims pursuant to 42 U.S.C. § 1983, which provides a private cause of action for violations of federal constitutional rights. The statute provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

Section 1983 does not create substantive rights, but instead provides remedies for rights established elsewhere. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). To succeed on a § 1983 claim, a plaintiff must demonstrate that the defendant, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995).

A "defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *Baraka*, 481 F.3d at 210 (internal citations and quotation marks omitted). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Claims seeking to impose liability on a defendant based on supervisory status, without more, will not subject the official to § 1983 liability. *Padilla v. Beard*, No. CIV. 1:CV-06-0478, 2006 WL 1410079, at *3 (M.D. Pa. May

18, 2006); *Rode*, 845 F.2d at 1207. However, in some instances, a municipality or local government may be held liable – via a "*Monell* claim" – when the execution of a policy or custom of such municipality or corporation "inflicts the injury" for which the plaintiff seeks redress. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978); *see Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003).

## III.   DISCUSSION

With the above standards in mind, the Court turns to Guziewicz's specific claims against each defendant. In doing so, the Court notes that while Guziewicz has identified certain claims as based purely on federal law, it is not entirely clear whether his claims for malicious prosecution, abuse of process, and false imprisonment are brought under federal or state law, or both. The Court therefore addresses those claims as if they were asserted pursuant to both 42 U.S.C. § 1983 and state law. Additionally, while Guziewicz did not specifically identify his first count as a claim for false arrest, the Court construes the count as such. (*See* Doc. 1, at 29-30 (alleging "arrest unduly deprived [] Guziewicz of his liberty and constituted a violation of his right to be free from arrest without probable cause")).

### A.   CLAIMS AGAINST PO GOMEZ (COUNTS ONE TO SEVEN)

Against PO Gomez Guziewicz asserts seven causes of action: (1) false arrest based on lack of probable cause or reasonable justification for finding he violated the terms of his probation ("Count One"); (2) unlawful search and seizure of his medical records ("Count Two"); (3) conspiracy between PO Gomez Cpl. McDonald to deprive Guziewicz of his Fourth Amendment and due process rights ("Count Three"); (4) malicious prosecution based on PO Gomez's initiation of probation violation and criminal proceedings without probable cause and malice aforethought  ("Count Four"); (5) abuse of process for the initiation of

probation violation and criminal proceedings for a purpose for which they were not intended to effect ("Count Five"); (6) IIED for recklessly and intentionally causing Guziewicz to suffer emotional distress ("Count Six"); and (7) false imprisonment for the initiation of probation violation and criminal proceedings ("Count Seven").

### 1. False Arrest (Count One), Malicious Prosecution (Count Four), and False Imprisonment (Count Seven)

Addressing this first set of claims, the Court notes that they all share a common element: lack of probable cause. "To state a claim for false arrest under the Fourth Amendment, a plaintiff must establish: (1) that there was an arrest; and (2) that the arrest was made without probable cause." *James v. City of Wilkes–Barre*, 700 F.3d 675, 680 (3d Cir. 2012). If probable cause is established with respect to any one of the charges for which a plaintiff is arrested, a claim of false arrest must fail. *Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007). To establish a claim for malicious prosecution, a plaintiff must demonstrate that "(1) the defendant initiated a criminal proceeding; (2) which ended in plaintiff's favor; (3) which was initiated without probable cause; *and* (4) the defendant acted maliciously or for a purpose other than bringing the defendant to justice." *Hamidian v. Occulto*, 854 F. Supp. 350, 353 (M.D. Pa. 1994) (internal citations omitted) (emphasis in original). As for the claim of false imprisonment, where "the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995).

Here, the undisputed facts establish that PO Gomez had probable cause to initiate probation revocation proceedings that led to criminal charges against Guziewicz. The Third Circuit has set out the contours of the probable-cause inquiry as follows:

Probable cause does not require the same type of specific evidence of each

element of the offense as would be needed to support a conviction. Therefore, the evidentiary standard for probable cause is significantly lower than the standard which is required for conviction. An arrest was made with probable cause if at the moment the arrest was made . . . the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that [the suspect] had committed or was committing an offense.

*Wright v. City of Philadelphia*, 409 F.3d 595, 602 (3d Cir. 2005) (internal citations omitted) (alterations in original).

In the case *sub judice*, PO Griffiths provided PO Gomez with a prescription, which Griffiths suspected was forged, for a medication about which Guziewicz had not advised PO Gomez. PO Gomez confirmed that the prescription, though written on Defendant Moran's prescription pad, was not and could not have been issued by Moran because Moran had ceased treating Guziewicz in December 2015. The prescription that Guziewicz allegedly produced from the RSH bore Moran's letterhead, and two other forged prescriptions came to light that were not issued by Moran despite that they were written on his pad. Regardless as to whether Guziewicz "was guilty of a parole violation," there was probable cause to initiate the revocation and criminal proceedings. Based on this clear showing of probable cause alone, the Probation Defendants have established their entitlement to summary judgment as to these claims. *Fennell v. Kuykendall*, No. CV 18-4226, 2019 WL 196564, at *7 n.81 (E.D. Pa. Jan. 14, 2019).

Further, to the extent Guziewicz asserts that these claims are also based on state law, the same result obtains because his probation revocation and arrest were supported by probable cause. *See Mills v. City of Harrisburg*, 350 F. App'x 770, 774 (3d Cir. 2009) (citing *Renk v. City of Pittsburgh*, 537 Pa. 68, 641 A.2d 289, 293 (1994); *Lippay v. Christos*, 996 F.2d 1490, 1502 (3d Cir.1993)).

### 2.   Unlawful Search and Seizure of Medical Records (Count Two)

"Pennsylvania authorizes county parole officers to conduct a warrantless search of a parolee's property 'if there is reasonable suspicion to believe that the real or other property in the possession of or under the control of the offender contains contraband or other evidence of violations of the conditions of supervision.'" *United States v. Strickland*, 237 F. App'x 773, 777 (3d Cir. 2007) (quoting 61 Pa. Cons. Stat. Ann. § 331.27b(d)(2)). Probable cause is not a prerequisite: "[a]ll that is required is reasonable suspicion of a probation violation." *United States v. Crews*, 494 F. App'x 240, 244 (3d Cir. 2012). "Indeed, where a parole officer has discovered a parole violation and reasonably believes that a parolee may have committed further violations, parole officers are 'duty-bound' to investigate." *United States v. Henry*, 472 F. Supp. 2d 649, 654 (E.D. Pa. 2007), *aff'd*, 360 F. App'x 395 (3d Cir. 2010). Courts "consider the totality of the circumstances to determine whether the officer has a particularized and objective basis for suspecting legal wrongdoing." *Strickland*, 237 F. App'x at 777 (internal quotation marks omitted).

Here, reasonable suspicion arose "the moment that [Guziewicz] tested positive" for having ingested a medication without providing a valid prescription and first advising PO Gomez that he was taking the medication. *See United States v. Crews*, 494 F. App'x 240, 244 (3d Cir. 2012) (noting that reasonable suspicion was established "the moment that Crews tested positive for opiates, marijuana, and cocaine"). Moreover, it was PO Gomez who had brought to Defendant Moran's office the forged prescription that Guziewicz himself provided to PO Griffiths. Insofar as that prescription provided the basis for a reasonable suspicion to believe Guziewicz had violated his terms of probation, there are no facts from which it can even be inferred that Guziewicz's Fourth Amendment rights were violated under these

circumstances. Additionally, Guziewicz signed an agreement permitting warrantless searches of his person and property.

### 3.   Conspiracy (Count Three)

"To prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law 'reached an understanding' to deprive him of his constitutional rights." *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 293-94 (3d Cir. 2018) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150-52 (1970)). "The elements of a claim of conspiracy to violate federal civil rights are that (1) two or more persons conspire to deprive any person of [constitutional rights]; (2) one or more of the conspirators performs . . . any overt act in furtherance of the conspiracy; and (3) that overt act injures the plaintiff in his person or property or deprives the plaintiff of any right or privilege of a citizen of the United States, with the added gloss under § 1983 that the conspirators act under the color of state law." *Jutrowski*, 904 F.3d at 294 n.15 (internal quotation marks omitted) (brackets and ellipses in original).

Here, the undisputed facts establish that PO Gomez and Cpl. McDonald in no way conspired together or performed any acts in furtherance of a conspiracy that deprived Guziewicz of his rights. Indeed, Cpl. McDonald expressly denied taking part in such a scheme, and Guziewicz has not come forth with any contrary facts. Whether this claim is characterized under federal or state law, the Probation Defendants have therefore met their burden of showing the absence of any material facts such that they are entitled to judgment as a matter of law. Additionally, as to § 1983, "[t]he grant of summary judgment is proper on [a conspiracy] claim where a plaintiff cannot establish an underlying violation of any constitutional rights." *Martin v. Unknown U.S. Marshals*, 965 F. Supp. 2d 502, 547 (D.N.J. 2013), *aff'd sub nom. Estate of Martin v. U.S. Marshals Serv. Agents*, 649 F. App'x 239 (3d Cir.

2016). Thus, because the Probation Defendants are entitled to judgment as to the constitutional claims, they are *ipso facto* entitled to judgment on the conspiracy claim.

### 4.   Abuse of Process (Count Five)

"To establish a claim for abuse of process it must be shown that the defendant (1) used a legal process against the plaintiff; (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff." *Langman v. Keystone Nazareth Bank & Tr. Co.*, 502 F. App'x 220, 224 (3d Cir. 2012) (internal quotation marks omitted). "The claim can be maintained [w]hen process is used to effect an extortionate demand, or to cause the surrender of a legal right, or is used in any other way not so intended by proper use of the process." *Felker v. Christine*, 796 F. Supp. 135, 142 (M.D. Pa. 1992) (internal quotation marks omitted) (brackets in original), *aff'd*, 983 F.2d 1050 (3d Cir. 1992). "The issue of malice, whether couched in terms of actual malice, as in a claim of malicious prosecution, or, as here, in an abuse of process claim, is inescapable." *Felker*, 796 F. Supp. at 142.

Here, the undisputed facts do not reveal "anything similar to ill will or intentional impropriety on the part of [PO Gomez]." *See Felker*, 796 F. Supp. at 142. To the contrary, the facts indicate that PO Gomez, tipped off by another probation officer, investigated a forged prescription slip, which investigation led to further revelations including the existence of other forged prescriptions in Guziewicz's name. Faced with a forged prescription slip and the fact that Guziewicz had not informed her that he was taking any new medications, PO Gomez initiated the probation revocation proceedings based on the reasonable suspicion that Guziewicz had violated a condition of his probation.

If Guziewicz is asserting a state law claim for abuse of process, judgment is likewise

warranted in favor of the Probation Defendants. "[I]n order to state a valid state claim for abuse of process under Pennsylvania law the plaintiffs must allege facts that show that the legal process was used primarily to accomplish a purpose for which the process was not designed." *Brunelle v. City of Scranton*, No. 3:15-CV-960, 2018 WL 3725731, at *10 (M.D. Pa. July 17, 2018) (internal quotation marks omitted), *report and recommendation adopted*, No. 3:15-CV-960, 2018 WL 3715718 (M.D. Pa. Aug. 3, 2018). The plaintiff must plead "facts which show that the use of some legal process was not designed to accomplish its stated goal, but rather was intended and perverted to some other goal, solely to harass." *Brunelle*, 2018 WL 3725731, at *10. In the case at bar, the facts of record establish that PO Gomez began investigating possible parole violations only after her colleague advised her of his suspicion that the prescription Guziewicz produced was a forgery, not due to some ulterior motive. Further, while Guziewicz alleges that PO Gomez conspired with Renee Magnotta (the former county probation officer against whom Guziewicz filed a civil rights complaint) to wrongly violate and charge Guziewicz, PO Gomez does not even know Magnotta.

### 5.   IIED (Count Six)

"In Pennsylvania, in order to establish a claim for IIED, there are four elements that must be met: (1) extreme and outrageous conduct, (2) which is intentional or reckless; (3) it must cause emotional distress, and (4) that distress must be severe." *L.H. v. Pittston Area Sch. Dist.*, 130 F. Supp. 3d 918, 927 (M.D. Pa. 2015), *aff'd*, 666 F. App'x 213 (3d Cir. 2016). Examples of sufficiently extreme and outrageous conduct include: "(1) killing the plaintiff's son with an automobile and then burying the body . . . ; (2) intentionally fabricating documents that led to the plaintiff's arrest for murder; and (3) knowingly releasing to the press false medical records diagnosing the plaintiff with a fatal disease."

*Police Dep't*, 604 F. Supp. 2d 739, 756 (M.D. Pa. 2009). The conduct "must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998) (internal quotation marks omitted).

Here, "nothing about the conduct of [PO Gomez] in the present case could be characterized as sufficiently 'extreme and outrageous' to support a claim for intentional infliction of emotional distress under Pennsylvania law." *Mills v. City of Harrisburg*, 350 F. App'x 770, 774 (3d Cir. 2009) (affirming summary judgment on IIED claim). No reasonable juror could find that PO Gomez acted to such a extreme and outrageous degree merely because she investigated a forged prescription, initiated probation revocation proceedings, and provided testimony in connection with those proceedings.

### 6.   Sovereign and Qualified Immunity

The Probation Defendants additionally argue that summary judgment should be granted (1) as to the state law claims asserted in Counts Five (abuse of process), Six (IIED), and Seven (false imprisonment) based on sovereign immunity; and (2) as to any alleged constitutional violations based on qualified immunity.

Regarding sovereign immunity, the Commonwealth's "sovereign immunity statute shields the Commonwealth, its officials, and its employees acting within the scope of their duties from suit." *Foster v. McLaughlin*, 203 F. Supp. 3d 483, 488 (E.D. Pa. 2016). "The probation department is an arm of the state, and its employees are state actors, making them subject to sovereign immunity." *Clark v. Conahan*, 737 F. Supp. 2d 239, 258 (M.D. Pa. 2010) (citing *Haybarger v. Lawrence County Adult Probation and Parole*, 551 F.3d 193, 198 (3d Cir. 2008)). "Conduct of an employee is within the scope of employment when it is of a kind and

nature that the employee is employed to perform, it occurs substantially within the authorized time and space limits, and the action is prompted, at least in part, by a purpose to serve the employer." *Clark*, 737 F. Supp. 2d at 258. The Commonwealth may waive its immunity by consenting to suit, as it has done in nine "limited circumstances": "1) vehicle liability; 2) medical-professional liability; 3) care, custody or control of personal property; 4) Commonwealth real estate, highway and sidewalks; 5) potholes and other dangerous conditions; 6) care, custody or control of animals; 7) liquor store sales; 8) National Guard activities; and 9) toxoids and vaccines. Each of these exceptions is strictly construed." *Foster*, 203 F. Supp. 3d at 488 (footnote omitted). Sovereign immunity only extends to official-capacity claims. *Foster*, 203 F. Supp. 3d at 487.

Here, given the undisputed facts concerning PO Gomez's conduct, it is clear that the actions she took in relation to Guziewicz were within the scope of her employment. Further, the Commonwealth has not waived sovereign immunity for the torts of abuse of process, IIED, and false imprisonment, nor has it waived sovereign immunity as to malicious prosecution. Under these facts, PO Gomez is absolutely immune from suit as to not only Five, Six, and Seven – insofar as they are based in state law and brought against Gomez in her official capacity – but also as to Count Four (malicious prosecution).

As to qualified immunity, "[t]he doctrine of qualified immunity shields officials from civil liability 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Williams v. City of York, Pennsylvania*, No. 18-3682, 2020 WL 4249437, at *4 (3d Cir. July 24, 2020) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "[Q]ualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Williams*, 2020 WL 4249437,

at *4 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). When a qualified immunity defense has been raised, a two-pronged inquiry applies and requires district courts to determine "(1) whether the plaintiff sufficiently alleged the violation of a constitutional right, and (2) whether the right was clearly established at the time of the official's conduct." *Williams*, 2020 WL 4249437, at *4 (internal quotation marks omitted). Unlike state sovereign immunity, qualified immunity applies in the context of individual-capacity claims. *See, e.g.*, *Giles v. Kearney*, 571 F.3d 318, 325 (3d Cir. 2009).

Applying his standard here, for all the reasons stated *supra*, PO Gomez did not violate any clearly established statutory or constitutional rights. To be sure, PO Gomez would have known she needed probable cause to violate Guziewicz for failing to comply with a condition of his probation; likewise, a reasonable probation officer in her position would have known that she needed reasonable suspicion to conduct any searches or seizures of Guziewicz person or property. However, the undisputed facts establish that PO Gomez did not act incompetently or knowingly violate any laws or rights when she investigated the forged prescription, initiated the probation revocation proceedings, and actively participated in pressing forward the criminal charges against Guziewicz. Moreover, it cannot be said that by investigating a suspicious prescription by bringing that prescription to the doctor's office from which it purportedly originated, PO Gomez violated a clearly established right that would have been apparent to an objectively reasonable probation officer. *Cf. Newland v. Reehorst*, 328 F. App'x 788, 791 (3d Cir. 2009) ("[B]ecause of the peculiar facts presented in this case, it would not have been apparent to an objectively reasonable officer that the parole condition she sought to impose . . . violated clearly established law.").

### 7.   Conclusion

In sum, the Probation Defendants have established their entitlement to judgment as a matter of law as to all claims asserted against PO Gomez. Their motion for summary judgment is therefore granted as to Counts One through Seven.

### B.   SUPERVISORY LIABILITY CLAIM AGAINST PO MUNLEY (COUNT EIGHT)

In his eighth count, Guziewicz seeks to impose supervisory liability against PO Munley based, it appears, on PO Munley's purported role in supervising PO Gomez. Judgment in favor of the Probation Defendants as to this claim is warranted for two reasons. First, because the Probation Defendants have established their entitlement to judgment on all constitutional claims against PO Gomez, "[Guziewicz's] claim[] of supervisory liability . . . fail[s] because . . . there is no underlying constitutional violation." *Talley v. Varner*, 786 F. App'x 326, 329 (3d Cir. 2019). Second, according to the uncontroverted facts, PO Munley was not PO Gomez's supervisor, nor did he train LCAPO employees or undertake any other supervisory role or related responsibilities.

Summary judgment is therefore granted as to Count Eight.

### C.   *MONELL* CLAIM AGAINST DEFENDANT MCCARTHY (COUNT NINE)

With his ninth count, Guziewicz alleges that Defendant McCarthy (1) failed to properly and adequately train LCAPO employees regarding searches and seizures of patient medical records and privacy laws; (2) "with deliberate indifference and callous disregard, failed to approve, implement, and maintain relevant and appropriate practices and policies respecting the search and seizure of patient medical records"; (3) "arbitrarily created a state policy or custom of the [LCAPO] that contravened the procedural due process clause of the Fourth Amendment . . . ."; and (4) arbitrarily created "[a] state policy or custom contrary to

the Fourth Amendment's guaranteed protection from warrantless searches and seizures" that "directly resulted in a violation of [Guziewicz's civil rights]," which caused him to suffer substantial injuries and damages. (Doc. 1, at 34-35).

This claim suffers from the same defect of Guziewicz's supervisory liability claim against PO Munley: there is no underlying constitutional violation upon which to base the claim given that the Probation Defendants have established that they are entitled to judgment as a matter of law as to his constitutional claims. *See, e.g., Lansberry v. Altoona Area Sch. Dist.,* 356 F. Supp. 3d 486, 497 (W.D. Pa. 2018) (noting that "the requirement of an underlying constitutional violation is implicit in the Third Circuit's *Monell* framework"). Further, McCarthy's uncontroverted testimony concerning the LCAPO's policies, practices, and procedures, including regarding training – and the LCAPO's 100% compliance therewith – establishes that no *Monell* violation occurred here.

Summary judgment is therefore granted as to Count Nine.

D. BREACH OF PHYSICIAN-PATIENT CONFIDENTIALITY CLAIM AGAINST DEFENDANT MORAN (COUNT TEN)

As indicated *supra*, although Guziewicz initially asserted an IIED claim against Defendant Moran under the eleventh count of his complaint, District Judge Brann dismissed that claim without prejudice, and Guziewicz did not file an amended pleading asserting that claim. (Doc. 18, at 10-11). In his Memorandum Opinion, District Judge Brann further noted that Guziewicz clarified that his breach of physician-patient confidentiality claim is premised on state law grounds. (Doc. 18, at 8; *see* Doc. 16, at 4-5 (arguing, in brief in opposition to motion to dismiss, that the breach of confidentiality claim is brought under state law)).

Thus, the only remaining count against Defendant Moran is a state law claim for breach of physician-patient confidentiality ("Count Ten"). In Count Ten, Guziewicz alleges

that (1) Moran "expressly authorized the release of personally identifiable medical records . . . for prosecutorial use"; (2) Moran's "authorization for the[] [records'] release was given without legal justification or excuse and with knowledge that said records would be utilized for prosecutorial purposes"; (3) Moran did so as "an 'agent of the government'"; and (4) Moran "failed to properly and adequately train his employees in the areas of federal and state constitutional search and seizure laws, as they pertain to patient medical records, as well as all applicable patient privacy laws." (Doc. 1, at 35-36).

In denying Defendant Moran's motion to dismiss Guziewicz's Count Ten, District Judge Brann noted that "Pennsylvania courts have indeed recognized a cause of action for breach of physician-patient confidentiality." (Doc. 18, at 8-9 nn.46-48 (citing *Haddad v. Gopal*, 787 A.2d 975, 981 (Pa. Super. 2001); *Moses v. McWilliams*, 549 A.2d 950, 953-54 (Pa. Super. Ct. 1988); *Burger v. Blair Med. Assocs., Inc.*, 964 A.2d 374, 380 (Pa. 2009)); *see Grimminger v. Maitra*, 887 A.2d 276, 279 (Pa. 2005) ("Pennsylvania recognizes a civil cause of action for breach of the physician-patient privilege where 'confidential disclosures occurred that were unrelated to any judicial proceedings.'" (quoting *Haddad*, 787 A.2d at 981)). District Judge Brann went on to state that courts "have noted that '[d]octors have an obligation to their patients to keep communications, diagnosis, and treatment completely confidential.'" (Doc. 18, at 8 n.47 (quoting *Haddad*, 787 A.2d at 981)). However, "to be actionable at law, 'the [allegedly improper] disclosure must be made without legal justification or excuse.'" (Doc. 18, at 9 n.49 (quoting *Moses*, 549 A.2d at 953-54)). Finding dismissal inappropriate, District Judge Brann noted Guziewicz's allegations that Defendant Gorolis called Moran when PO Gomez visited the doctor's office on March 1, 2016, and that Moran gave permission to take a photocopy of an allegedly forged oxycodone prescription and the December 2015 lab report,

all of which led to probation charges and Guziewicz's arrest. (Doc. 18, at 9).

Regardless of the allegations in Guziewicz's complaint, the undisputed facts of record establish that Moran was not at his office at the time of PO Gomez's visit on March 1, 2016, he had no discussions with Defendant Gorolis regarding the prescriptions or Guziewicz's medical records, and Gorolis never requested Morna's approval or personal authorization to provide any information to PO Gomez on that date. Because Moran did not permit or authorize any disclosures, the basis for Guziewicz's claim outlined by District Judge Brann is no longer viable.

Therefore, the only arguably remaining aspect of Count Ten is the claim that Moran failed to properly train and supervise his staff with respect to searches and seizures and the confidentiality of private records. Moran did not specifically allege in his affidavit in support of summary judgment that he adequately trained and supervised his staff. Nevertheless, the facts of record establish that Gorolis had a legal justification and excuse for providing information to PO Gomez, particularly in light of the fact that the Probation Defendants established that PO Gomez had a right to seek such information based, in part, on Guziewicz's consent as part of his conditions of probation. *Cf. Grimminger*, 887 A.2d at 279 ("A patient's 'consent also serves as an affirmative defense to an action for breach of physician-patient confidentiality.'" (quoting *Haddad, 787 A.2d at 981*)). Moreover, as Defendant Moran notes, the right to privacy over one's confidential information is not absolute, and individuals' expectations of privacy may, in some circumstances, be diminished. (Doc. 50, at 6 (citing *Moses, 549 A.2d at 956*)). Apropos to the instant matter, "[a] parolee and a probationer have limited Fourth Amendment rights because of a diminished expectation of privacy." *Com. v. Williams*, 692 A.2d 1031, 1035 (Pa. 1997). Thus, because the

record establishes that Gorolis had a legal justification or excuse when she provided information to PO Gomez, the record also establishes that any lapses in Defendant Moran's training, supervision, or education of his staff did not result in a breach of confidentiality for which Guziewicz can recover.

Additionally, only one of the three forged prescriptions were provided by Defendant Gorolis, and the one that Gorolis did provide was initially disclosed by Sheeley's when the prescription was faxed to Moran's office. The other two were provided by Guziewicz himself and Jeffrey Zymblosky, respectively. Therefore, the only item that Gorolis appears to have disclosed in the first instance is the lab report, which, given the reasons stated herein, she had justification and excuse to produce to the probation officer assigned to Guziewicz's supervision upon the revelation that Guziewicz had been forging prescriptions under Moran's letterhead.

Summary judgment is therefore granted as to Count Ten.

E.    REMAINING STATE LAW CLAIMS AGAINST NON-MOVING DEFENDANT GOROLIS
      (COUNTS TWELVE AND THIRTEEN)

Because the only remaining claims in this case are state law claims against Defendant Gorolis – i.e., breach of physician-patient confidentiality and IIED ("Count Twelve" and "Count Thirteen") – the Court declines to exercise its pendant jurisdiction to hear those claims and will dismiss them without prejudice. Where a district court has dismissed all claims over which it had original jurisdiction, it may decline to exercise supplemental jurisdiction over state law claims. 28 U.S.C. § 1367(c)(3). The same rule applies where a district court grants summary judgment as to all claims over which it had original jurisdiction. *See Byrd v. Shannon,* 715 F.3d 117, 128 (3d Cir. 2013) (affirming district court's grant of summary judgment and corresponding "decision to decline supplemental jurisdiction over . . . state law negligence

claims" under 28 U.S.C. § 1367(c)). Whether a court will exercise supplemental jurisdiction is within its discretion. *Kach v. Hose*, 589 F.3d 626, 650 (3d Cir. 2009). That decision should be based on "the values of judicial economy, convenience, fairness, and comity . . . ." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). The Court finds nothing in the record to distinguish this case from the ordinary one as to the remaining state law claims against Defendant Gorolis, and thus the balance of factors "point toward declining to exercise jurisdiction over the remaining state law claims." *See Cohill*, 484 U.S. at 350 n.7.

Counts Twelve and Thirteen are therefore be dismissed without prejudice to Guziewicz's right to refile those claims in state court.

## IV.   CONCLUSION

For the foregoing reasons, the Court rules as follows:

1. The Probation Defendants' motion for summary judgment (Doc. 45) is **GRANTED**;

2. Defendant Moran's motion for summary judgment (Doc. 48) is **GRANTED**;

3. Moran's cross-claim (Doc. 21, at 11) is **DISMISSED AS MOOT**;

4. The Clerk of Court is directed to enter judgment in favor of the Probation Defendants and Defendant Moran and against Guziewicz;

5. Guziewicz's remaining state law claims against non-moving Defendant Gorolis are **DISMISSED WITHOUT PREJUDICE** to Guziewicz's right to refile those claims in state court; and

6. The Clerk of Court is directed to **CLOSE** this case.

An appropriate Order will follow.

BY THE COURT:

Dated: July 31, 2020

*s/ Karoline Mehalchick*

**KAROLINE MEHALCHICK**
**United States Magistrate Judge**